All right, our second case today is number 21-13990 United States v. John Burnette. Ms. Zaharia. Good morning, and may it please the court. Amy Zaharia for Appellant John Burnette. I'd like to confirm that it's permissible to discuss the sealed issue in court this morning? It's up to you to decide what you want to argue, but our ruling is that we are not sealing the transcript or the proceeding today because of that possibility of discussion. Perfect. Thank you, Your Honor. I'd like to focus on three reasons why the court should vacate Mr. Burnette's conviction. First, in McDonald, the Supreme Court held that to commit bribery, an official must agree to take action on a specific identified matter. The jury instructions in this case said the opposite, and the government failed to prove the requisite matter. Second, the district court abused its discretion in permitting Agent Sweet, the government's star witness, to speculate that my client's exculpatory statements critical to his defense were false. And third, the court abused its discretion in excluding evidence that Agent Sweet paid for prostitution as part of the investigation and then lied to cover it up. Mr. Heria, can I ask you a question about your first issue? So not to knock you out of sequence. So we'll get right into your first issue. But on the jury instructions issue, I mean, do you concede that you invited error as to something? And now we've got to figure out as to what? Yes, Your Honor, I think as to our second jury instruction argument, I don't think I can dispute that counsel agreed to strike the language from the pattern instructions. That is the McDonald analogy to a lawsuit hearing or agency determination. Which, as I understand, like would have helped to specify if your objection is to the specificity of the matter, that language would have helped to specify to sort of to narrow the type of matter that we're talking about, right? No, I don't think so, Your Honor. I think the purpose of that sentence is to explain to the jury the required gravity of the matter. And in McDonald, the court gave three reasons why the jury instructions were wrong. That was the first one, that the jury was not instructed how to identify the right kind of matter. But the third error in McDonald, which was a separate error, was that the jury was not instructed that it needed to find that the official agreed to take action on the identified matter. And that's at page 579 of McDonald. That's a separate error. And that's our first argument. Our first argument is that the instructions failed to inform the jury that Mr. Maddox needed to agree to take action on an identified matter. In fact, they said the opposite, that the matter did not need to be identified at the time of the quid pro quo. And we submit that's just plainly in conflict with McDonald. And as to that issue, the defense did not invite error. The government doesn't argue invited error. I think both parties agree that we're just on plain error review as to that issue. Now, as to that issue, there was substantial evidence in the record that Mr. Maddox never agreed to take action on an identified matter. I would point the court to three pieces of the record. First, what is the evidence of the agreement between agency and Mr. Maddox? That is that he would provide general support and general interference, not tied to a particular matter. Second, so there wasn't evidence. I mean, I guess you can tell me if I'm wrong, but I guess I thought I had understood the record that the and maybe maybe I'm using terminology in a way that's not sort of precise. So help me here. I guess I thought about McDonald as touching on two things. One, what I'll call what I'll call the matter, which I take here to be. And now I've forgotten the names of them, but the two specific real estate developments at issue. And then to the nature of the the act that one might take with respect to that matter, vote, abstain, influence, whatever. So I guess so help me. Number one, like, do I am I using the terminology in a way that's even decipherable? I think, yes, Your Honor, although I think when it comes to what the required matter is, the way that McDonald describes what a sufficient matter is, is a particular question before the governmental entity. So I think perhaps whether to annex false chase would be a question or a matter as opposed to false chase writ large. But, yes, I think your honor is that there's the official needs to agree to take an act on a specific identified matter. We're not claiming the act has to be identified in advance, but the matter does under McDonald. And your contention is that annex false chase slow roll the other one. Sorry that I've forgotten the name. Those matters were not sufficiently identified. Well, our position is that there's there's either no evidence or a minimum. The evidence was in conflict as to whether Maddox agreed to take action on those matters. And there is substantial evidence that what the agents thought they were paying Maddox for was for general goodwill to do something for them at some point in the future, whether it's now or five years from now. And we cite that evidence at pages 24 and 25 of our brief. Let me just ask you this, and then I promise that I'll zip it and let you let you talk and my co-panelists ask questions. So I just want to make sure I've got this straight. I mean, so so it sounds like you under you agree that under McDonald and I guess our follow on case in Roberson, the the decision itself on the matter doesn't have to be specified at the time of the deal. But the matter itself does. So your contention is there's insufficient evidence. Well, let me let me put it this way. Hypothetically, someone says, I'll give you general assistance over the course of time to annex, you know, the specific project. Yeah, false chase. That's good enough. Right. I agree. Okay. But your contention is that's not what we have here. Correct. And the government relies very heavily on the Las Vegas conversation for the idea that Maddox agreed to take that action. I urge the court to look beyond the government's brief to the transcript of that conversation. And what you see there is every time the agents tried to inject a specific matter into the conversation, whether it be an exiles chase, whether it be slow roll the RFP Maddox's response was either. That's already occurred, but there's no that that's not doesn't need to take place that already happened, or that's going to happen naturally. There's just nothing in that conversation from which the requisite agreement could be inferred. And as I indicated, there's substantial evidence going the other way that this was not for a particular matter. So at a minimum, even if the court thought there was some evidence. When it comes to the jury instructions. The evidence is such an is so in conflict on this point that we think there's at least a reasonable probability, the jury would have acquitted Mr Burnett, if it had been correctly instructed that it needed to find an agreement on a specific matter. Now, what about, what about Mr Burnett statement in March, to the agents that quote, I would continue to pay page the $10,000. What you're buying is the no vote. Right. So, on that point, I don't think that's tied to a particular matter. And, and, and there's no evidence that Mr Maddox wasn't what he was not a party to that conversation and what's required of course for bribery is that the official agree to take action on matter. So I think that later conversation between Mr Burnett and agents we can't itself, and establish the requisite matter, particularly given all of the voluminous evidence that they were paying him, not for a particular matter but for general goodwill. Now, if I may briefly turn to the evidentiary issues in the case let me start with agents needs speculation about my clients exculpatory statements, and it is black letter lot that one witness may not testify about the truthfulness of another witnesses statements agency violated that rule. I agree that that was there, but I'm not sure that it was harmful error in the way that we have to measure. It seems to me that in light of your clients conversations that are recorded anyway. It was something that the, that the jury could decide upon, there were instructions, and among all of the evidence over this two week trial this was a very short, short interaction, and finally it wasn't emphasized in the closing, or any, any other part of the trial as far as I can tell. So given that background, why is this not harmless error. So I think the best evidence that this is not harmless error is the district courts own statements in the middle of trial and a colloquy with the parties, where the court said, here's what the jury is going to have to sort out, it's going to have to sort out which side's vision of what really was going on is correct. And that's based on the statements in the recordings, where my client made many exculpatory statements, and then explain those exculpatory statements at trial that he did not intend to bribe. Mr Maddox, and the district court said this, that's what the jury is going to have to start out and then it specifically identify agents weeks testimony regarding these explosive exculpatory statements as being directly relevant to the jury's determination, and that's at page 172 and the district court made a very similar comment at 461 page 253, the court itself identified this testimony as relevant to the jury's determination. This went to the core of Mr Burnett's defense. He highlighted these exculpatory statements in opening, he highlighted them, closing, and the government in closing at 466 pages, 84 and 85 expressly urge the jury to compare and contrast the credibility of agent Burnett held out agent suite as having no stake in the case and urge the jury to credit him, and not to credit Mr Burnett and agent suite again as the same witness who offered this extremely egregious testimony that called into question not only Mr Burnett's Mr Maddox to bribe him. Now, I think all of this goes to show why the third, our third issue is also extremely prejudicial, and that is the exclusion of evidence regarding agent seats, crime of paying for prostitution during the investigation and on his lies about it. This was the government's star witness. He is the one who opined on Mr Burnett's credibility over and over again. He was the one who opined that he had this agreement with Mr Maddox. What were you, what, what were you allowed to examine the agent about. We were allowed to examine the agent as to whether he paid for a dance, and whether he then neglect or lied about the dance in response to questions from the prosecutors, we were not allowed to introduce any extrinsic evidence, meaning we had to just take answers on the stand. Well normally wouldn't you be restricted on extrinsic evidence anyways. No. Well 608B only applies to evidence for general character for truthfulness. The district court and the argument on this issue seem to be laboring under the misimpression that all impeachment evidence is subject to 608B. That's not the case I think the government agrees with us that evidence that goes to bias is not subject to 608B. And this evidence clearly went to agency. How does it go to how does it go to bias I mean he's, he was a retired agent. Why doesn't it go to credibility. Well, if he was so committed to getting Mr Maddox and Mr Burnett and the course of this investigation that he was willing to commit a crime. That certainly shows his bias to slant his testimony against Mr Burnett on the stand to slant his testimony in favor of the government, and all of that goes to explain why his motive, his motive to see my client convicted that motive caused him to commit a crime that motive can convince them to lie to the prosecutors in this case, and a jury could have concluded from that evidence that he had an incentive to testify in a way that was harmful to my clients, the difficulty I have like I see the line that you're sort of fuzzy to me that I wonder whether on abuse of discretion review we can really say that the district court was sort of off its rocker here. Well, I think you, you can your honor. First of all, the district court injected this issue on its own it was not an issue that government had raised and I do urge the court to read the transcript of the argument it's at ECF 452. The district court seemingly thought all impeachment evidence is subject to rule six or eight be the questions are focused on impeachment, not on character for truthfulness, and the arguments that Council was making clearly went to bias and able stand the Supreme Court decision able stands for the proposition that if evidence goes to both bias and character for truthfulness, of course extrinsic evidence is admissible to prove the bias. And none of that appears anywhere in the district courts very cursory opinion on this issue. Unless the court has further questions I'll reserve for rebuttal. Thank you, Mr. Sorry. Mr when. Good morning, your honors and may it please the court. Connor when United States. Based on that argument, I'll address the same three issues here, the McDonald related issues, Mr sweets false exculpatory statement testimony, and then also the impeachment evidence that the district court excluded and prevented Mr Burnett from using And I'll take those in the same order. So, starting with the McDonald issue here. The district courts jury instructions correctly told the jury that federal bribery occurs when someone pays a local legislator to vote abstain or not the pressure campaign on a public official to take a similar kind of action with the rises to the level of formal government action on a legislative proposal. And the district court then informs the jury that it doesn't matter if the topic of that legislative proposal is unknown at the time that the bargain is struck. That is federal bribery. And to understand why that is I actually think it's helpful to go to an analogy here. For example, if I give a judge payment in exchange for a promise that he or she would rule in my favor on any case that ever came before them. That too would be federal bribery, even though the ultimate topic of the cases is yet unknown. That's because I've given a quid. That's payment for a quote, a judge's promise to take official acts to render a ruling on a future matter. That is the case that will come before the legal controversy. Now, the case or controversy the topic. It's not known yet, but the judge has made a corrupt bargain, and the federal bribery statute sweeps in that sort of conduct. That's sort of the is that the so called retainer theory. I think that's correct, Your Honor, I would, I would deem this a retainer theory of bribery. And this court has generally referred to the retainer and as opportunities theories of bribery is as kind of co extensive you or at least overlapping, you can see that in this court's opinion and Wilberson can put no 10, it treats them kind of the same. Some courts of appeals have started to draw many analytic differences between the two, but this court has not done so. So, so let me ask you this because maybe I misunderstood her but I don't think I took Miss Haria to be saying anything different really yet. Except that she says, in this case, there is no evidence that in your hypothetical, you know, sort of the offer to the judge could even could have made any difference because his or her mind was already made up. Maybe I didn't fully understand the question I want to, can you repeat that I want to make sure I don't. She can tell me if I'm wrong on rebuttal if I've misunderstood her but I don't think Miss Haria is sort of dying in the ditch on that that retainer theory has gone the way of the Dodo I think she's willing to accept retainer theory she just says on the in this case, there's not evidence that retainer theory was sort of like necessary, if you will, because false chip, whatever was going to happen with false chase was going to happen, whatever was going to happen with the other project, the name of which I can never remember it was going to happen. I agree with your honor that Mr Burnett isn't contesting that the retainer theory is out the window, so to speak, but we do have a disagreement over whether or not the retainer theory would require the identification of the topic of the under underlying legislative bill right so in Mr Burnett version of things. The agreement needs to be such that I will pay you public official to take a vote on the false chase annexation specifically, it's the government's theory of the federal bribery statute that it's enough for the agreement to be. I will pay you Mr Maddox to take votes for me on future pieces of local legislation. I don't know what they are yet, but this is our agreement and when I call on you to take these votes, you will. And no matter, no matter how no matter how temporarily open ended. No matter how temporarily open ended right this is the retainer theory of bribery, the votes may come in the future the votes may never come, and in fact this is actually what McDonald points out right, it's not important whether or not the official ever actually takes the act. So temporal open endedness is understandable. The point is that when the private citizen needs the public official to cast a vote to abstain from a vote, or to mount this what a pressure campaign we're talking about on a on a legislative proposal or something that would come before a legislative body that agreements been struck in a sense the public official is sitting in the pocketbook of a private citizen, and can be called upon at any time. And that's the sort of theory of bribery that the district courts jury instruction articulated here and informed the jury that it could convict upon. You can see that this is actually open, and that McDonald didn't curtail this theory of bribery, based on the Supreme Court analytic framework in the in the McDonald decision, the court began by determining whether hosting an event, arranging a meeting, or making a phone meeting, lack the requisite level of formal government action, and therefore they couldn't qualify as a question of matter. That's obviously very different from a legislative vote, a legislative vote in fact it's hard to think of something that is more quintessentially an exercise formal government power. So McDonald very much leaves open that had something like that been before the court that could have been a qualifying matter, one that need not be identified, and then of course the actual decision on the legislative proposal would be taking a vote for an abstention for mounting a pressure campaign on another public official to act upon. At the very least, we're on plain air review, and I don't think it can be said that the Supreme Court's decision for any of this court's case law since McDonald has plainly cut off this theory of liability under the federal bribery statute. There's no, there's nothing in the statutory text or in any binding case law that clearly says that this is not a viable theory of bribery. At this point in time. In fact, when the Second Circuit was sort of confronting somewhat similar issues it's different because they were dealing with a pure as the opportunities arise theory of bribery, and I would encourage the court to look at judge locates concurrence in that case, but he kind of discusses the theory of bribery at play in this case, and emphasizes silver wasn't discussing it, but in teasing out some of these complicated interactions between when things need to be identified, if ever. It took the Second Circuit virtually an 80 page to discuss that there's nothing comparable I think any claim of plain air here is just really difficult to muster. And even if there was a plane air, it's certainly harmless, as, as we kind of lay out in our brief discussions between Maddox Burnett Miller and sweet relating to falls chase and Myers Park, again, well in the fall of 2016. They're discussing the possibility of moving on these two projects in particular. And then at that Las Vegas conversation that Mr Harriet talks about Mr sweet that specifically talks with Mr Maddox, and indicates that they're going to move forward on falls chase, but there's a need, and the need is annexation. Mr Maddox then responds and is saying, that's the only problem. It's actually saying, other than that, the deal is good to go. Everything's already been done, set up, so he's acknowledging that need. Similarly with my the Myers Park RFP and Mr sweet and Mr Burnett indicate that there's a need to delay that so that they can move on that property development, when it suits them. And Mr Maddox says that's the natural thing to happen. Now of course this isn't an explicit statement by Mr Maddox that yes, I will do these things, but to make to have that sort of requirement is frankly somewhat silly public officials don't tend to explicitly state that they will engage and act of corruption. They often act in innuendo. And we can see why that is here from the trial record itself and the conversations that Mr Burnett had with the agents, Mr Burnett told the agents in particular that Mr Maddox didn't want to interact with the two of them didn't want to discuss anything sort of inappropriate with anyone but Burnett and in Las Vegas he even had questions about whether these people were FBI agents, he was suspicious of these people he wasn't going to make some sort of explicit statement that gave Nevertheless, that conversation told him what the ask was. And then as the checks continue to roll in in January and February, the quid and the quo were there at a corrupt agreement cognizable under the federal bribery statute. And the evidence is quite strong. In fact, in later conversations, Mr Burnett acknowledges that deals were made, Mr Maddox played guilty to charges associated with this case and the jury was aware of that fact, I think it's difficult to say that there wasn't some sort of Ms Zaharia made a good argument as to why it wasn't harmless I'd be, I'd be interested to hear what your responses. Sure. Happy to talk about that. So I think we obviously we rest on the arguments in our briefness to the merits of this but with regards to harmlessness, specifically, you know, I think the district court kind of hit it on the tee here right Ms Zaharia throughout statements about the district court's view of the evidence, but then and it's ruling on Mr Burnett's motion for release pending appeal which concerns this issue, it put things in more perspective, it said that Mr sweets testimony was a drop in an ocean of evidence regarding Mr Burnett's criminal intent. And that's what's at issue here right Mr sweets statements have altered the calculus on criminal intent. That's not possible. And the reason for that is the plethora of audio recordings that show Mr Burnett's own statements, both before the supposedly false exculpatory statement. And long after. Indeed, for months in both the fall of 2016, and the winter and spring of 2017, Mr Burnett was making statements like, like the following. He was directing Miller and sweet to keep sending the checks to governance for Maddox, you can see that at docket entry for 42 pages 192. You can see Burnett saying that Maddox would make sure that the votes are enough if they kept saying the $10,000 paying the $10,000 checks to Carter Smith. You can see a page 198 of that same docket entry that Burnett was telling sweet to keep Maddox on the payroll. You can see on page 203, I would continue to pay page the $10,000 a, you have all these audio recordings but that's not it, that the jury had at trial evidence that Mr Burnett had engaged in acts of bribery in fact he admitted to it essentially in past dealings with Mr Maddox, and for a little bit of context, down at the trial court there was a vehicle count here that was used to charge acts of bribery that had occurred many years in the past, past the statute of limitations for honest I'd refer the court to docket entry for 65 pages 62 to 69 and 73 and docket entry for 61 pages 48 to 4957 to 58 and 60, and this court has said in its decision in United States the McNair 605 dot 3d at 12 or four that evidence like this, a past bribery between the players is highly appropriate of corrupt intent. So, whatever minimal conversation that Mr sweet hat regarding false expulsory statements, it simply wasn't going to overcome the plethora of evidence that showed that Mr Burnett have corrupt intent. Does that answer your question, Your Honor. Thank you. All right, so how 608 when you talk about 608 before your time runs out. Yeah, I'd be glad to do that. So, specifically here I think there's two things to know. First, the district courts grounds for what I call the careful compromise and what it allowed Burnett to talk about in question Mr sweet about actually rested on to evidentiary grounds, it's not just 608 be it's also rule for three, and the district court is clear and it's ruling that even if the 608 hadn't provided a basis for exclude for excluding the evidence it did it would have reached the same. So, with regards to 608 be specifically 608 be authorizes the district court to permit the use of extrinsic evidence in questioning, when it goes to character for truth. It forbids the use of extrinsic evidence when it goes to character. And here you can see it, both in the statements that Mr Burnett's counsel was making in the trial court, also in his opening brief in this case, they have always sought to introduce this evidence to prove that Mr sweet lied to prosecutors about the events that happened in Las Vegas and some of the investigative tactics that we used that has always been the goal to discredit Mr sweet in this fashion, and the district court said well that's credibility for truthfulness 608 he says no extrinsic evidence, it's out. And in doing so, you know, it actually permitted Mr Burnett to go down this line of inquiry to a certain extent right, it said, you can ask Mr sweet why he didn't tell prosecutors about the use about the fact that he paid for a private dance for Mr But you can go no further. You can't go into this water, potential acts of prostitution, which were disputed on both sides. Let me let me let me ask you this just sort of going sort of piggybacking on my own question to Mr Hari about the sort of what I take to be the fuzzy line between character for truthfulness and bias. Would it have been an abuse of discretion for the district court to allow the evidence. And I don't think that it would I mean the abuse of discretion standard right and envisions that there are multiple different ways that different judges might, you know, different evidentiary compromises that they might strike. I think the court could have allowed the evidence, I think that would have been fine, but I don't think there's anything wrong with it keeping it out because it allowed Mr Burnett to do what he thought to do, prove that Mr sweet initially failed to disclose evidence to prosecutors, and then it limited Mr Burnett use of extremely prejudicial and salacious testimony that was disputed and was going to leave lead to a collateral mini trial. You're going to have government witnesses and defense witnesses saying different things with an audio tape that maybe meant one thing and maybe met another and not even the district court could say for sure. I mean it was going to be an entire prejudicial sideshow, and the district courts exclusion of that evidence. It didn't even prevent Mr Burnett from making support. For those reasons we don't think there's any sort of a personal layer. If the court has no further questions. Government's happy to ask. Very much, Mr. So how are you have your full time for rebuttal. Thank you, let me start where we just left with a 68 be issue. I would urge the court to look to both our opposition to the government's motion and lemonade, which is ECF 398 as well as to the transcript of the argument which is for 52 were counsel clearly made arguments that went beyond character for truthfulness that clearly went beyond the fact that agency had lied. Council argued that they should be able to put in the fact that he committed a crime that he paid for prostitution, but that was part and page seven, that if an agent paid for an act of prostitution, that would be admissible impeachment evidence, they clear as day conceded that their only argument was that this evidence wasn't sufficiently probative of that. And I think if the core reads a transcript of agent sweets recording, or he says, I just paid for Maddox to get asked. It's pretty progress. Now, with respect to agent sweets. Isn't there also another line that comes after that. And it's not clear who said it but something like well not to get after something like that. Correct. And I think even if that was agent sweet who said that, I think the jury was perfectly capable of interpreting what that sentence likely meant. Either he's covering himself knowing he's on tape, or he's referring to an act of oral sex as opposed to intercourse. Those are the two most obvious interpretations of that line. I do understand what you're saying, but you know you have sort of a very hard burden here right you have to show that it was an abuse of discretion. How do you get, I mean, I think, I think that the court could have decided to allow it in. But how do you get to the point where it was an abuse of discretion. I think if you read the court's order the court didn't grapple with any of the questions that we are talking about right now. None of this discussion about bias versus character for truthfulness is anywhere in the court's opinion and so I do think when you are far more primitive. Let me just ask you. So let's just say for purposes of this argument that the court did grapple with all of these things on the record. And it came to the same decision, would it then have been an abuse of discretion. I'm trying to figure out what you're saying the abuse of discretion is was the abuse of discretion the decision itself, or was it the way that court got to the decision. Well, I think both because if this evidence is relevant to bias under United States versus evil a Supreme Court case extrinsic evidence is admissible. And then the evidence clearly goes to bias. So I don't think the court could have excluded the evidence, whether or not what about under 403. I don't think it could have excluded under will follow three either given how primitive this evidence is, and to the extent the court was concerned about it, prejudicing the government. And the answer is, well the government shouldn't be engaging in this kind of conduct. To begin with. I see my time has expired. Unless the court has further questions regarding the other two issues. We urge support to vacate the commission below. Both very much.